UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MARK A.,[1]

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,[2]

    Defendant.

Case No. 3:20-cv-00326
Magistrate Judge Norah McCann King

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the applications of Plaintiff Mark A. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying those applications. This matter is now before the Court, with the consent of the parties, *see Joint Consent of the Parties*, ECF No. 4, on *Plaintiff's Statement of Errors*, ECF No. 10, *Defendant's Memorandum in Opposition*, ECF No. 13, and the *Certified Administrative Record*, ECF No. 8. After careful consideration of the entire record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court denies *Plaintiff's Statement of Errors* and affirms the Commissioner's decision.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* S.D. Ohio General Order 22-01.
[2] Kilolo Kijakazi is the Acting Commissioner of Social Security. *See* Fed. R. Civ. P. 25(d).

1

I.   PROCEDURAL HISTORY

Plaintiff protectively filed his applications for benefits on September 29, 2017, alleging that he has been disabled since January 1, 2017, based on a number of physical and mental impairments. R. 15.[3] The applications were denied initially and upon reconsideration and Plaintiff requested a *de novo* hearing before an administrative law judge. R. 121-22. Administrative Law Judge ("ALJ") Marc Jones held a hearing on August 23, 2019, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 33-51. In a decision dated September 20, 2019, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from January 1, 2017, Plaintiff's alleged disability onset date, through the date of that decision. R. 15-26. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on June 5, 2020. R. 1-6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On March 24, 2022, the case was reassigned to the undersigned. ECF No. 15. The matter is ripe for disposition.

II.   LEGAL STANDARD

A.   Standard of Review

In reviewing applications for Social Security disability benefits, "[t]he Commissioner's conclusion will be affirmed absent a determination that the ALJ failed to apply the correct legal standard or made fact findings unsupported by substantial evidence in the record." *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). The United States Supreme Court has explained the

---

[3] References to pages as they appear in the Certified Administrative Record will be cited as "R. _."

substantial evidence standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted). In addition, "'[w]here substantial evidence supports the [Commissioner's] determination, it is conclusive, even if substantial evidence also supports the opposite conclusion.'" *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)); *see also Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("Therefore, if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'") (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). "Yet, even if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

**B.    Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof through step four; at step

five, the burden shifts to the Commissioner." *Rabbers*, 582 F.3d at 652 (*citing Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the

plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III. ALJ DECISION AND APPELLATE ISSUES

The Plaintiff was 60 years old on his alleged disability onset date. R. 24. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 1, 2017, his alleged disability onset date. R. 17.

At step two, the ALJ found that Plaintiff's lumbar spine disorder and peripheral vascular disease are severe impairments. R. 18. The ALJ also found that Plaintiff's controlled hypertension, chronic obstructive pulmonary disease ("COPD"), history of hernia surgeries, and depression are not severe impairments. *Id.* The ALJ also found that Plaintiff's single visit to a rheumatologist was insufficient to establish fibromyalgia as a medically determinable impairment. R. 20.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 20.

At step four, the ALJ found that Plaintiff had the RFC to perform a limited range of medium work:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 202.1567(c) and 416.967(c) except that he can frequently stoop and crouch; occasionally climb ladders, ropes, or scaffolds; occasionally crawl; and can never work at unprotected heights.

R. 21. The ALJ relied on the testimony of the vocational expert to find that this RFC permitted the performance of Plaintiff's past relevant work as a motorcycle mechanic as it is actually performed. R. 24.

At step five, the ALJ also found that a significant number of jobs—*e.g.*, approximately 54,000 jobs as a linen room attendant; approximately 213,000 jobs as a laundry worker I; and approximately 72,000 jobs as a press tender—existed in the national economy and could be performed by Plaintiff. R. 25. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from January 1, 2017, his alleged disability onset date, through the date of the decision. *Id.*

Plaintiff disagrees with the ALJ's findings at steps two and four[4] and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Statement of Errors,* ECF No. 10. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Memorandum in Opposition,* ECF No. 13.

## IV. RELEVANT EVIDENCE

In November 2017, Gail Mutchler, M.D., reviewed the record on behalf of the state agency. R. 60-62. She opined that, as a result of Plaintiff's low back pain and history of inguinal hernia repairs, Plaintiff could occasionally lift and carry 50 pounds and frequently lift and carry 25 pounds. R. 61. He could stand or walk, and could sit, for about six hours each in an eight-hour workday. *Id.* He was unlimited in his ability to push and pull objects, subject to the weight restrictions. *Id.* He could occasionally climb ladders, ropes, and scaffolds, and could frequently stoop. *Id.* He should avoid concentrated exposure to hazards. R. 62. Otherwise, Dr. Mutchler

---

[4] Plaintiff actually frames his challenges to the ALJ's decision as an improper reliance on the vocational expert's testimony at step five of the sequential evaluation, but his arguments appear to address the ALJ's failure to include a severe mental impairment at step two of the sequential evaluation and the ALJ's determination that Plaintiff has the RFC for a limited range of medium work. *See generally, Plaintiff's Statement of Errors*, ECF No. 10.

found no limitations. *Id*. In February 2018, state agency consultant William Bolz, M.D., also reviewed the record and confirmed Dr. Mutchler's opinions. R. 92-94.

The ALJ found the opinions of Dr. Bolz and Dr. Mutchler persuasive:

> The undersigned was persuaded by the opinions of the State Agency medical consultants Gail Mutchler, M.D. and William Bolz, M.D. State agency consultants are highly qualified doctors who are skilled in the evaluation of the medical issues in disability claims under the Act. Dr. Mutchler and Dr. Bolz found the claimant had the residual functional capacity to perform medium exertional work with some postural and environmental limitations based, in part, on the claimant's report that his low back pain began when he was 19 years old with [a] motor vehicle accident, there was a possible recent escalation with the question of right-sided radicular symptoms, lumbar spine x-rays were negative except for mild degenerative disc disease, and he had a history of inguinal hernia repairs and reported groin pain but no findings of recurrent hernia. Their assessments were supported by the evidence they used and were consistent with the record as a whole.

R. 23 (citations to record omitted).

In December 2017, Sarah Barwick, Psy.D., performed a consultative psychological examination of Plaintiff at the request of the state agency. R. 495-500. On clinical examination, Plaintiff was cooperative, his speech was normal, he exhibited no abnormalities of mental thought or content, he presented with a depressed mood and congruent affect, there were no indications of anxiety, he was alert, responsive and oriented, his judgment was sufficient, and he demonstrated good insight. R. 497-98. Dr. Barwick diagnosed major depressive disorder, single episode, mild with anxious distress. R. 499. She summarized Plaintiff's history and report:

> [Plaintiff] stated he has struggled with feelings of sadness since his divorce in 2012. He described health conditions that have impeded upon his occupational functioning. He described worry concerning his financial future. He has attended mental health counseling for several months. He declined psychotropic medications. He endorsed a steady work history. Since 1990 he has worked as a motorcycle mechanic. His physical limitations allegedly impede upon his leisure activities, as well. [Plaintiff] appeared to be functioning in the average range of intelligence.

R. 498-99. In assessing Plaintiff's functional limitations, Dr. Barwick opined that Plaintiff could follow instructions and carry out multi-step instructions in the workplace, but that motivational

factors related to symptoms of depression "may impede upon his concentration and persistence of pace," R. 499, that he interacted appropriately with her, R. 500, and that his depressive symptoms would be "unlikely" to increase should he return to the workforce. *Id*.

    The ALJ found Dr. Barwick's opinion persuasive, reasoning:

> The undersigned was persuaded by the opinions of psychological consultative examiner Sarah Barwick Psy.D., who opined that motivational factors related to symptoms of depression may impede upon his concentration and persistence of pace, that he had adequate task persistence and there was little evidence to suggest he would require substantial support when adjusting to minor or major changes in working conditions; that he attributed much of his emotional distress to his occupational impairment and it was unlikely that his depressive symptoms would increase if he returned to the workforce. Dr. Barwick's assessments were supported by the evidence she used and were consistent with the record as a whole.

R. 20 (citation to record omitted).

    In December 2017, Carl Tishler, Ph.D., reviewed the record on behalf of the state agency and concluded that Plaintiff's depression causes no more than mild limitations in his ability to understand, remember, or apply information, interact with other, concentrate, persist, or maintain pace, and adapt or manage himself. R. 59. In February 2018, Courtney Zeune, Psy.D., also reviewed the record on behalf of the state agency and concluded that Plaintiff "suffers no more than mild limitations as a result of his depression." R. 90. The ALJ found the opinions of Dr. Tishler and Dr. Zeune persuasive because they were supported by the evidence and were consistent with the record as a whole. R. 19-20.

    In February 2018, Plaintiff underwent a venous Doppler study that showed "significant varicose veins with reflux." R. 697. Ajaz Umerani, M.D., noted leg pain and skin changes due to a history of varicose veins. *Id*. Plaintiff had seen little improvement with analgesics and prescribed NSAIDS. *Id*. Dr. Umerani concluded that Plaintiff's "signs and symptoms interfere with activities of daily living." *Id*. However, in March and April 2018, Plaintiff underwent

8

radiofrequency ablation to the right and left great and small saphenous veins. R. 685-95. An April 2018 duplex ultrasound and Doppler images of the bilateral lower extremities were read as normal. R. 759. The ALJ found Dr. Umerani's February 2018 opinion that Plaintiff's "signs and symptoms interfere with activities of daily living" to be unpersuasive "as it was vague and did not account for the effects of subsequent treatment." R. 23-24.

Plaintiff testified at the administrative hearing that he had worked as a motorcycle mechanic since 1993. R. 41. The work required lifting weights of up to 20 pounds and standing or walking "probably 70 percent" of the workday. *Id*. He complained of chronic back problems with resulting pain and numbness in his legs. R. 42. He sometimes carries a cane because his back sometimes gives out. *Id*. As a result, Plaintiff spends most of his time lying down or sitting. *Id*. He also testified that he suffers from COPD, R. 41, which he attributes to allergies and which causes shortness of breath and his "lungs starting to, you know, shut down…." R. 43. He uses two inhalers every day. R.44. He has undergone two hernia surgeries and he testified that a surgeon has recommended a third surgery. R. 46. Plaintiff estimated that he could walk "[a] mile" and could stand 15 minutes before having problems. R. 43-44. He can lift a gallon of milk, but relies on others to lift heavier weights. R. 45.

The vocational expert characterized Plaintiff's past relevant work as heavy in exertion as generally performed and medium as actually performed. R. 48. Asked to assume a claimant with Plaintiff's vocational profile and the RFC that the ALJ ultimately crafted, the vocational expert testified that such a claimant could perform Plaintiff's past relevant work as well as a significant number of other jobs in the national economy. R. 48-49. Asked to assume additional postural and environmental restrictions, as well as limitations to simple work-related decisions and simple routine tasks with no assembly line work strictly enforced in the production quotas, R. 49, the

vocational expert testified that Plaintiff's past relevant work would be eliminated but that the other jobs previously identified by her would remain available to such a claimant. *Id.* The vocational expert also testified that most employers would tolerate an off-task rate of 10 percent and an absence rate of one day per month. R. 50.

**V.      DISCUSSION**

Plaintiff contends that the ALJ erred in relying on the vocational expert's testimony because the RFC crafted by the ALJ failed to accommodate a need to be off-task more than 10% of the workday and a need to be absent more than one day per month. Significantly, and as the Acting Commissioner points out, the record contains no medical evidence or opinion supporting such limitations. Nevertheless, Plaintiff contends that this limitation arises from both severe physical and severe mental impairments. *Plaintiff's Statement of Errors*, ECF No. 10, PageID# 871. *See also id.* at PageID# 868 (Plaintiff "will partake in off-task behavior and require additional absences" as a result of severe physical and mental impairments). Because, as noted above, the ALJ found that Plaintiff's depression is not a severe impairment, the Court construes Plaintiff's argument in this regard as a challenge, in part, to the ALJ's step two determination.

The state agency psychologists and the consultative examining psychologist, whose opinions the ALJ found persuasive, R. 19-20, found no more than mild limitations caused by Plaintiff's depression. As a consequence, the ALJ found at step two of the sequential evaluation that depression was not a severe impairment. R. 19. This finding enjoys substantial support in the record and complied with the applicable regulations. 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1) ("If we rate the degrees of your limitation as 'none' or 'mild,' we will generally conclude that your [mental] impairment(s) is not severe, unless the evidence otherwise indicates

that there is more than a minimal limitation in your ability to do basic work activities….") The ALJ did not err in this regard.

Plaintiff also contends that his proposed limitation in off-task behavior and absence from work would result from pain. *Plaintiff's Statement of Errors*, ECF No. 10, PageID# 871 ("[As a result of] physical impairments and the chronic pain associated with each, it is likely to presume that he would not be compatible in a working environment.") The Court construes this contention as a challenge to the ALJ's assessment of Plaintiff's subjective complaints. Although the contention is based on rank speculation, the Court will nevertheless address that challenge.

Subjective allegations of pain or other symptoms, unsupported by objective medical evidence, cannot alone establish a disability. 20 C.F.R. §§ 404.1529(a), 416.929(a). In evaluating a claimant's subjective complaints, an ALJ must follow a two-step process. SSR 16-3p, 2016 WL 1119029 (March 16, 2016).[5] First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id*. "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]" *Id*. In conducting this evaluation, an ALJ must consider the objective medical evidence as well as other evidence relevant to a claimant's subjective symptoms. 20 C.F.R. § 404.1529(c)(3) (listing the following factors to consider: daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating

---

[5] SSR 16-3p superseded SSR 96-7p on March 26, 2016, and eliminated the use of the term "credibility." SSR 16-3p. SSR 16-3p clarifies that the ALJ should not make statements about an individual's truthfulness but should determine whether the claimant's subjective complaints are consistent with other evidence in the record.

11

factors; the type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate pain or other symptoms; treatment, other than medication, currently received or have received for relief of pain or other symptoms; any measures currently used or have used to relieve pain or other symptoms; and other factors concerning your functional limitations and restrictions due to pain or other symptoms). *See also* 20 C.F.R. § 416.929(c)(3) (same). Finally, although an ALJ's evaluation in this regard must be supported by substantial evidence, the ALJ has wide discretion to weigh the claimant's subjective complaints and may discount those complaints that are not supported by other relevant objective evidence. *Walters v. Commissioner of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (citing *Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981)).

In the case presently before the Court, the ALJ recognized the appropriate standards, R. 21, acknowledged Plaintiff's subjective complaints regarding limitation of function and pain, *id.*, and provided an exhaustive summary of the medical evidence, R. 21-23. Having done so, the ALJ found that "the record in its entirety, including the objective evidence, is inconsistent with a finding of disability." *Id.* The Court concludes that the ALJ did not err in his assessment of Plaintiff's subjective complaints of pain.

Finally, Plaintiff argues that the ALJ erred in crafting an RFC that did not include a limitation to being off task more than 10% of the workday and to being absent from work more than one day per month. In crafting the RFC for a limited range of medium work, the ALJ found persuasive the state agency physicians' opinions that Plaintiff could perform medium exertional work with some postural and environmental limitations. In determining that Plaintiff had the RFC for a limited range of medium work, the ALJ also noted findings in August 2017 of decreased range of motion, pain, and spasm but no swelling, edema, or deformity, and Plaintiff's

12

report that he took no pain medication; normal musculoskeletal findings in September 2017; September 2017 x-rays of the lumbar spine that indicated only mild L4-5 and L5-S1 disc degenerative changes; Plaintiff's report in October 2017 that physical therapy was helping with his pain and his request to end physical therapy in December 2017; findings on examination in April 2018 of lumbar spine tenderness and mild pain with range of motion; Plaintiff's report in June 2018 that he felt "pretty good" except after mowing his lawn; findings on musculoskeletal examination in January 2019 of tenderness and moderate pain with range of motion of the cervical and lumbar spine; findings in April 2019 of normal cervical and joint range of motion, normal gait, but positive lower back tender points; March and April 2018 radiofrequency ablation to right and left great and small saphenous veins, following which Doppler images were normal in the arteries of both lower extremities; and Plaintiff's history of inguinal hernia repairs and reported groin pain but no findings of recurrent hernia. R. 21-23. In the view of this Court, these findings unquestionably offer substantial support for the ALJ's RFC determination. The Court is therefore without authority to second-guess those findings. *See* 42 U.S.C. § 405(g); *Kyle,* 609 F.3d at 854. This is true, moreover, even if Plaintiff can point to evidence in the record that would support an opposite conclusion. *See Emard*, 953 F.3d at 849.

VI. **CONCLUSION**

For these reasons, the Court **DENIES** *Plaintiff's Statement of Errors*, ECF No. 10, and **AFFIRMS** the Commissioner's decision.

The Clerk is **DIRECTED** to enter **FINAL JUDGMENT** pursuant to Sentence 4 of 42 U.S.C. § 405(g).

Date: August 30, 2022                              *s/Norah McCann King*
                                                   NORAH McCANN KING
                                                   UNITED STATES MAGISTRATE JUDGE

13